GRIFFIN, J.,
concurring specially.
As the result of the supreme court of Florida’s decision in Exposito v. State, 891 *329 So.2d 525 (Fla.2004), there is no doubt that this court lacks jurisdiction to review the trial court’s decision to reject the jury’s verdict and to reduce the conviction of this defendant from felony cruelty to animals to a misdemeanor.[1] The Legislature’s failure to fill this jurisdictional gap by providing for review of a trial court’s decision to acquit the defendant of the offense of which the jury found him guilty and instead convict the defendant of a lesser offense is frustrating in this case, because in my view, the trial court’s decision is dangerously wrong.
This case unfolded when a maintenance employee at an apartment complex in Bre-vard County found a Rottweiler, which he knew to be defendant’s, loose on the grounds. The animal had evidently jumped out of a second story window. The dog’s glands were swollen and it appeared as though it might be nursing puppies. After many unsuccessful attempts to reach the defendant at his listed place of employment, the maintenance worker entered the apartment.
In the apartment were found the bloated body of a dead dog in a cage, two dead turtles, a dead lizard and a dead bird. One bird was found barely alive, as was one skinny, “dried out” snake. Also found alive, confined by a gate in the kitchen was an emaciated Australian Shepherd dog, stomach sunken in and surrounded by urine and feces. There was no evidence of food or water anywhere. This dog, whose name was Pepsi, was lying down on its side and appeared unable to get up. It had to be carried from the apartment.
The defendant was charged with felony animal cruelty. The animal cruelty statute, section 828.12, Florida Statutes (2007) provides as follows:
Cruelty to animals
(1) A person who unnecessarily overloads, overdrives, torments, deprives of necessary sustenance or shelter, or unnecessarily mutilates, or kills any animal, or causes the same to be done, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhumane manner, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or by a fine of not more than $5,000, or both.
(2) A person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, is guilty of a felony of the third degree, punishable as provided in s. 775.082 or by a fine of not more than $10,000, or both.
At trial, the veterinarian who examined Pepsi when she was first removed from the defendant’s apartment testified that she was malnourished and dehydrated. He found no other cause for her condition other than that she needed food and water. An expert on the Australian Shepherd breed who examined Pepsi soon after she was taken to the local Humane Society testified that Pepsi had no muscle tone and little or no fat on its torso. She was not able to detect any food in its stomach. Photographs of the animals were introduced into evidence.
Incredibly, the defendant confessed to animal control officers, but the jury never heard the confession because the trial court ruled that the State had failed to establish the corpus delicti of the crime. When questioned by animal control, the defendant first claimed he had paid some *330 one to care for the animals, but when he could not identify this person, he changed his story, next claiming he was financially unable to provide food for the dogs. When it was pointed out to him that a bag of dog food was found in his bedroom, he finally said that he was using starvation as a “training technique.”[2]
The trial court appeared first to rule that no corpus delicti for the crime had been established because there was no evidence of any “act”, only an omission to feed. Eventually, the State was able to convince the trial court that, because of the definitions for chapter 828, “omissions” and “neglect,” as well as “acts,” were equally proscribed. See § 828.02, Fla. Stat. (2007). The trial court then decided that there was no proof of corpus delicti because there was no veterinary testimony that the dogs suffered pain due to the withholding of food. This fact required no such expert testimony, however. The veterinary testimony that the dog was malnourished, dehydrated, too weak to stand and without muscle mass were sufficient. In a case such as this, the animal’s pain or suffering due to starvation is a matter of common sense and ordinary experience, just as in Bartlett v. State, 929 So.2d 1125 (Fla. 4th DCA 2006), where it was not necessary, in order to sustain a felony conviction under this statute, for a veterinarian to testify that a possum shot multiple times with a BB gun was suffering and had to be euthanized.
At the close of evidence, there was an extensive hearing on the motion for judgment of acquittal, at which the judge again expressed dismay that the “commits an act” language of sub-section two could include the withholding of food, or neglect. The judge then articulated an additional concern about the construction of the two subsections. He observed that the misdemeanor specifically referred to depriving an animal of necessary sustenance or shelter and expressed doubt that, given this specific reference to deprivation of sustenance in the misdemeanor section of the statute, that the felony could be committed by depriving the animal of sustenance. Notwithstanding these expressed doubts, the trial court correctly denied the motion and instructed the jury on both the felony and misdemeanor counts. Even without hearing the defendant’s admission that he was deliberately using starvation of the dogs as a “training technique,” the jury convicted the defendant on both felony counts.
After the verdict, citing Florida Rule of Criminal Procedure 3.620, the trial court announced that the felony counts under sub-section two of section 828.12 could not be sustained by the evidence and instead convicted defendant of misdemeanor counts under subsection one. At sentencing, he explained:
THE COURT: And it goes right back to the question I asked in trial early on and it came up in argument in the JOA, the first time we crossed the bridge about omissions, commissions, and then the statutory construction problem that I’ve had from the beginning with this case. I think if the legislature wishes to address this as a felony, they need to address the statute and re — they need to address the statute. All right. Thank you.
Despite the trial court’s expressed difficulty with the construction of this statute, the statutory scheme is clear. If a person does the acts described in subsection one, he has committed a misdemeanor. If, however, the person intentionally commits an act which results in a cruel death or in *331 excessive or repeated pain or suffering, a felony is committed. In other words, it is a misdemeanor to fail to feed a dog under the described circumstances; it is a felony to starve a dog to death, or deprive it of sustenance to the point where, like Pepsi, it has no muscle mass and is too weak even to stand.[3]
If I could get my hands on this case, I would vote to reverse.

. Interestingly, the trial judge was aware of the fact that his decision was not reviewable and took the unusual step of providing the parties with the controlling case law at the end of the sentencing hearing.

. Bird food was also found in the apartment.

. I concede that there is no evidence of what caused the death of the unnamed dog in the cage other than the defendant’s own admission.